IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JAMES L. THOMPSON**, <br><br> *Plaintiff,* <br><br> v. <br><br> **GIRARD TELL,** *et al.*, <br><br> *Defendants.* | **Case No. 1:19-cv-18729-JDW-EAP** |

### MEMORANDUM

James Thompson brought this suit under Section 1983 for alleged violations of his Fourth and Fourteenth Amendment rights during a traffic stop. The Defendant Officers and City moved for summary judgement on all counts. Because there is a factual dispute as to what occurred before the traffic stop, I must leave Mr. Thompson's Fourth Amendment claim against the Officers to a jury. However, Mr. Thompson has not met his evidentiary burden with respect to all other counts, and Defendants are entitled to summary judgement on those counts.

I.   **BACKGROUND**

   A.   **Traffic Stop And Vehicle Search**

On October 5, 2017, Pleasantville Police Officers Ryan VanSyckle, Girard Tell, and Michael Mabkhouti stopped Mr. Thompson as he was driving in Pleasantville. The Parties dispute what happened in the moments leading up to the stop. The Officers claim that

Mr. Thompson made a sudden left-hand turn, nearly causing a collision. Mr. Thompson says he stopped at an intersection, signaled, and that a driver traveling in the other direction waived him through.

Once stopped, the Officers determined that Mr. Thompson was driving a rented vehicle. They could see several forms of air freshener and three cell phones. Officers VanSyckle and Mabkhouti also reported that Mr. Thompson appeared nervous. Based on these observations, the Officers ordered Mr. Thompson from the vehicle. Mr. Thompson complied after some protestations. Once outside the vehicle, Officer VanSyckle performed a pat-down on Mr. Thompson and found over $2,000 in Mr. Thompson's pockets.

Suspecting that Mr. Thompson was involved in drug activity, the Officers called for a K9 unit to search Mr. Thompson's vehicle. Mr. Thompson waited outside the vehicle until the K9 unit arrived over thirty minutes later. When K9 Officer Rocky performed an open-air sniff around the exterior of the vehicle, he indicated the presence of narcotics in the trunk. The Officers searched the trunk and found a handgun and white powder, later determined to be cocaine. The Officers arrested Mr. Thompson.

### B. Pleasantville Police

#### 1. Street Crimes Unit

Officers VanSyckle, Tell, and Mabkhouti were patrolling as part of the Street Crimes Unit ("SCU") when they stopped Mr. Thompson. The SCU is a division of the Pleasantville Police Department intended to provide "proactive policing targeting [sic] violent street

crimes." (D.I. 62-2 Page 38 of 56.) SCU Officers do not respond to calls; they generate their own work by stopping motor vehicles or pedestrians to look for signs of criminal activity. Officers VanSyckle's and Tell's traffic stop record evidences their proactive policing. In 2017, they made 137 of the Department's 166 traffic stops, approximately 82.5%. (D.I. 62-2 Page 55 of 56.) Officer Mabkhouti was an officer in training in 2017 and did not have any record of traffic stops.

Police Chief Sean Riggin explained that the SCU also provides "high visibility to the community and to offenders that there's a strong police presence." (D.I. 62-2 Pages 38-39 of 56.) However, SCU officers wear plain clothes and drive unmarked vehicles equipped with emergency lights. Unmarked Pleasantville Police vehicles also did not have dash cameras, nor did officers wear body cameras in 2017.

### 2. Traffic stops and race

Mr. Thompson relies on the Pleasantville Police Traffic Stop Race/Gender Report for 2016 and 2017 to support his claims of racial discrimination. These reports show that Black people were the subject of 189 (67%) of the Department's 282 stops in 2016 and 103 (62%) of the Department's 166 stops in 2017. (D.I. 62-2 Pages 50-56 of 56.) Officers Tell and VanSyckle's traffic stop numbers are in-line with the Department's numbers: Black people were the subject of 148 (71.8%) of the Officers' 206 stops in 2016 and 87 (63.5%) of Officers' 137 stops in 2017. (D.I. 62-2 Pages 50-56 of 56.)

3

### C. Procedural History

Mr. Thompson filed this action on October 4, 2019. The operative Complaint asserts three counts against Officers Tell, VanSyckle, and Mabkhouti under Section 1983: (A) unlawful search and seizure; (B) racial discrimination; and (C) conspiracy. The Complaint also asserts a municipal liability claim against the City of Pleasantville. On June 28, 2022, the Officers and City filed a Motion For Summary Judgment on all counts. Mr. Thompson opposed the Motion, and it is now ripe for disposition.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quotations omitted). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). However, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record

there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted).

## III. DISCUSSION

Section 1983 provides a "civil remedy for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Halsey v. Pfeiffer*, 750 F.3d 273, 290 (3d Cir. 2014) (quoting 42 U.S.C. § 1983)). To state a claim under Section 1983, a plaintiff must show that "'some person has deprived him of a federal right . . . [and] that the person who has deprived him of that right acted under color of state or territorial law.'" *Id.* (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (alteration in original)).

### A. Claims Against Individual Officers

Qualified immunity "shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). Courts should not "define clearly established law at a high level of generality." *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 716 (3d Cir. 2018). A court need not identify a case directly on point for a right to be clearly established, but "existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S.Ct. 548, 551 (2017). As an affirmative defense, the burden of establishing qualified immunity falls on to the official claiming it. *See Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 176 (3d Cir. 2011).

To determine if an officer's conduct is entitled to qualified immunity, courts ask two questions: (1) whether the defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was clearly established when the conduct took place. *Sauers*, 905 F.3d at 716. In assessing a claim of qualified immunity, like any other aspect of a summary judgment ruling, the court must not resolve genuine disputes of fact in favor of the moving party; instead, it must decide whether the facts taken in the light most favorable to the non-moving party take the case to a place where the law is not clearly established. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (*per curiam*). The first prong of qualified immunity overlaps with the merits of the liability determination, so I will assess each of Mr. Thompson's claims by considering the two-step qualified immunity test.

### 1. Unlawful search and seizure

The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. Const. amend. IV. A traffic stop is a seizure within the meaning of the Fourth Amendment. *See United States v. Hester,* 910 F.3d 78, 84 (3d Cir. 2018). Consistent with the Fourth Amendment, an officer may conduct a brief investigatory stop when he has reasonable suspicion that criminal activity is afoot. *See United States v. Lowe*, 791 F.3d 424, 434 (3d Cir. 2015). Reasonable suspicion is a "less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). Any technical violation of a traffic code

provides reasonable suspicion, even if the stop is merely pretext for the investigation of some other crime. *See United States v. Wilson*, 960 F.3d 136, 145 (3d Cir. 2020).

There is a factual dispute whether reasonable suspicion existed when the Officers stopped Mr. Thompson. The only evidence of the events leading up to the stop is the Parties' conflicting testimony. The Officers say that Mr. Thompson nearly caused a collision when he turned left across oncoming traffic. Mr. Thompson says that he stopped, signaled, and got the ok to proceed from the oncoming driver. Crediting Mr. Thompson's version of events, as I must at this stage, the Officers would not have had reasonable suspicion to perform a traffic stop.

If the initial stop was unconstitutional, the fact that probable cause developed during the stop to support the search is irrelevant. *See United States v. Delfin-Colina*, 464 F.3d 392, 397 (3d Cir. 2006); *Elozua v. State of New Jersey*, No. 04–2029, 2008 WL 370926, at *5 (D.N.J. Feb. 11, 2008). Defendants' argument appears to focus on the Officers' decision to arrest Mr. Thompson, rather than on decision to stop him in the first place. And maybe, if the exclusionary rule does not apply (as they argue), they had probable cause to effect an arrest. But I don't have to decide that because the stop itself constituted a seizure, and there's a factual dispute about whether the Officers had a reasonable suspicion to make that stop.

Because there's a factual dispute about the suspicion to make the stop, I have to turn to the second prong of the qualified immunity analysis. That officers have to have

reasonable suspicion to perform a traffic stop was clearly established when the Officers stopped Mr. Thompson. See *Delfin-Colina*, 464 F.3d at 397. Because the Officers' arguments focus on the search and arrest, rather than the initial stop, they don't make any argument about the law governing the stop being unclear. Therefore, the Officers are not entitled to qualified immunity.

### 2. Racial discrimination

"The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race." *Washington v. Davis*, 426 U.S. 229, 239 (1976). To make an Equal Protection Clause claim of racial profiling, a plaintiff must prove that the defendants' actions (a) had a discriminatory effect and (b) were motivated by a discriminatory purpose. See *Bradley v. United States*, 299 F.3d 197, 205 (3d Cir. 2002). A showing of discriminatory effect requires a showing that the plaintiff was a member of a protected class and that he was treated differently from those similarly situated who were not in that protected class. See *id*. at 205-06. In racial profiling cases, where discriminatory purpose may be hard to prove, "statistical evidence of discrimination may be the only means of proving a discriminatory effect." *Id.* at 206.

The only evidence of discrimination that Mr. Thompson offers is the Pleasantville Police Traffic Stop Race/Gender Report for 2016 and 2017. While the reports show that Black people were the subject of about two-thirds of the Department's traffic stops, Mr. Thompson does not provide any context or expert testimony by which to evaluate this

number. Without any context, that's not enough. "[P]arties may not prove discrimination merely by providing the court with statistical analyses. The statistics proffered must address the crucial question of whether one class is being treated differently from another class that is similarly situated." *Chavez v. Ill. State Police*, 251 F.3d 512, 638 (7th Cir. 2001).[1] Mr. Thompson offers no analysis of the number of people with whom Pleasantville Police come into contact or any other context for the gross numbers in the report. Without some analysis of the statistics, he has not proven discriminatory effect.

Even if the statistics were enough to show discriminatory effect, there's no evidence in the record of a discriminatory purpose. I can't just infer it from statistics, even if they show an effect. Purpose is about state of mind, and Mr. Thompson has no evidence about the Officers' state of mind. Because there's no evidence of a violation of a constitutional right, I will grant summary judgment on the racial discrimination claim.

### 3. Conspiracy

A civil conspiracy under Section 1983 is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Adams v. Teamsters*, 214 F. App'x 167, 172 (3d Cir. 2007). Mr. Thompson does not provide any

---

[1] The Third Circuit relied on *Chavez* in its decision in *Bradley*. *See Bradley*, 299 F.3d at 206.

evidence of an illicit agreement between the Officers. The only mention of conspiracy in either of his Motion responses is that "[t]hese defendants engaged in a conspiracy, albeit a public policy, to unlawfully stop African American male drivers…" (D.I. 68-1 at 3). This is insufficient to survive summary judgment.

### B.     Municipal Liability

A plaintiff that pursues a claim of municipal liability under Section 1983 may proceed in two ways. He may "put forth that an unconstitutional policy or custom of the municipality led to his . . . injuries, or that they were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (cleaned up). The two avenues "remain distinct: a plaintiff alleging that a policy or custom led to his or her injuries must be referring to an unconstitutional policy or custom, and a plaintiff alleging failure-to-supervise, train, or discipline must show that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Id.* at 106.

Mr. Thompson's municipal liability claim appears to have changed over time. The Second Amended Complaint asserts a failure to train and/or supervise theory of municipal liability. (D.I. 51 ¶¶ 59-61.) Mr. Thompson's response to the Motion for Summary Judgment, however, focuses on SCU practices to support a custom claim. Defendants do not address this inconsistency. Because Mr. Thompson's response argues only the custom

theory, I will treat the municipal liability claim as a claim that the City had an unconstitutional custom of racial profiling and seizures without reasonable suspicion.

To prove an unconstitutional custom, a plaintiff must show "that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019). A plaintiff must also show that the custom was the proximate cause of his injuries by demonstrating an "affirmative link" between the custom and the constitutional violation he alleges. *Id.*

Mr. Thompson has not provided evidence to support municipal liability for a custom of racial discrimination or unconstitutional seizures. Like with the individual liability racial discrimination claim, the number of traffic stops of Black people is not sufficient evidence of a racially discriminatory custom. And the "proactive policing" of the SCU is not evidence of a custom of unconstitutional seizures. If the SCU officers have a reasonable suspicion of criminal activity, they may lawfully perform brief investigatory stops. *See Delfin-Colina*, 464 F.3d at 397. Mr. Thompson offers no evidence to connect "proactive policing" to constitutional violations. For example, he does not show a history of complaints against the SCU for unlawful stops. The City, to the contrary, offers evidence that complaints against the SCU were lower than those against average patrolmen. Without any evidence connecting the City to an unconstitutional custom, the City is entitled to summary judgment.

## IV. CONCLUSION

Mr. Thompson's testimony is enough to create a triable issue of fact on his Fourth Amendment claim against the Officers, but he failed to provide any other evidence connecting the Officers or City to any other constitutional violation. Therefore, I must grant summary judgment on all other counts. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
HON. JOSHUA D. WOLSON
United States District Judge

April 24, 2023